IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

J & J SPORTS PRODUCTIONS, INC.,

    *Plaintiff*,

    v.

MARLENE R. KING, *et al.*,

    *Defendants*.

Civil Action No. ELH-14-953

**MEMORANDUM OPINION**

Plaintiff J & J Sports Productions, Inc. ("J & J") filed suit against three defendants: Marlene R. King; Michael A. John; and BLK 1 Inc., d/b/a La'Sons Bar and Grill ("La'Sons"), which is located in Baltimore, Maryland. ECF 1 (Complaint). According to plaintiff, defendants are liable for unlawfully intercepting plaintiff's broadcast of a particular boxing match, in violation of 47 U.S.C. §§ 553 and 605. In the Complaint, plaintiff seeks, *inter alia*, statutory penalties, injunctive relief, and attorneys' fees.

Defendants filed a Motion to Dismiss (ECF 12, "Mot."), supported by a memorandum (ECF 12-2, "Mem.") (collectively, the "Motion").[1] Plaintiff opposes the Motion (ECF 13, "Opposition" or "Opp.").

No hearing is necessary to resolve the Motion. *See* Local Rule 105.6. For the reasons that follow, I will deny the Motion.

---

[1] Although defense counsel filed the Motion on behalf of all three defendants on June 6, 2014, one defendant, Mr. John, had been voluntarily dismissed from the suit, without prejudice, on May 20, 2014. *See* ECF 6 (Notice of Partial Dismissal); ECF 8 (Order confirming dismissal of Mr. John). The electronic docket for this case reflects Mr. John's termination from this suit.

## I. Background[2]

J & J was granted the television broadcast distribution rights for a boxing match between Floyd Mayweather, Jr. and Saúl Álvarez, which occurred on September 14-15, 2013 (the "Broadcast"). Complaint ¶ 23. The Broadcast "originated via satellite uplink, and was subsequently re-transmitted to cable systems and satellite companies via satellite signal." *Id.* J & J entered into agreements with various Maryland entities, permitting those entities to exhibit the Broadcast to their customers. *Id.* ¶ 24.

Regarding La'Sons, plaintiff alleges that it "had a capacity for 101-200 people on September 15, 2014," and that it collected a $10 cover charge from patrons that day. Complaint ¶¶ 18-19.[3] In addition, it allegedly "advertised for the exhibition of Plaintiff's broadcast within" La'Sons. *Id.* ¶ 21. With respect to Ms. King, plaintiff alleges that she was an "officer[], director[], shareholder[], and/or principal[]" of La'Sons and served as its resident agent; that she had "supervisory capacity and control over the activities occurring within" La'Sons on September 15, 2014; that she had "close control over the internal operating procedures and employment practices" of La'Sons at that time; that she "received a financial benefit from the operations of" La'Sons on September 15, 2014; and that she "advertised for the exhibition of Plaintiff's broadcast within" La'Sons. Complaint ¶¶ 9-12, 14, 20.

J & J alleges that defendants or their agents, "with full knowledge that the Broadcast was

_____

[2] This Background is drawn from the Complaint. The court "'must accept as true all of the factual allegations contained in the complaint,'" and must "'draw all reasonable inferences in favor of the plaintiff.'" *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted).

[3] Although plaintiff indicates that the Broadcast of the boxing match spanned from September 14 into September 15, 2013, a number of the Complaint's other allegations expressly reference only September 15. However, in the Motion, defendants attach no significance to that aspect of the allegations, so I need not discuss it further here.

not to be received and exhibited by entities unauthorized to do so . . . unlawfully intercepted, received and/or de-scrambled said satellite signal, and did exhibit the Broadcast . . . at the time of its transmission willfully and for purposes of direct or indirect commercial advantage or private financial gain."  Complaint ¶ 26.  Defendants, by using "an illegal satellite receiver," allegedly "intercepted Plaintiff's signal and/or used a device to intercept Plaintiff's broadcast, which originated via satellite uplink and then re-transmitted via satellite or microwave signal to various cable and satellite systems."  *Id.* ¶ 27.   J & J asserts that there exist "multiple illegal methods of accessing the Broadcast, including but not limited to [:] (1) splicing an additional coaxial cable line or redirecting a wireless signal from an adjacent residence into a business establishment; (2) commercially misusing cable or satellite by registering same as a residence when it is, in fact, a business; or (3) taking a lawfully obtained box or satellite receiver from a private residence, into a business."  *Id.*

However, "[p]rior to discovery," J & J "is unable to determine" the precise method that defendants used to obtain the Broadcast.  Complaint ¶ 27.  In particular, plaintiff asserts that, absent discovery, it "cannot determine if Defendants intercepted Plaintiff's signal via a cable system, in violation of 47 U.S.C. § 553, or via a satellite transmission, in violation of 47 U.S.C. § 605."  *Id.*  Accordingly, plaintiff raises claims under 47 U.S.C. § 605[4] (Count I) and 47 U.S.C.

---

[4] Section 605(a) states, in relevant part: "No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information contained therein) for his own benefit or for the benefit of another not entitled thereto."  Section 605(e)(3)(A) grants a private right of action to "any person aggrieved."  Section § 605(d)(6) specifically defines the term "any person aggrieved" to include "any person with proprietary rights in the intercepted communication."

§ 553[5] (Count II) of the Federal Cable Communications Act of 1984, Pub. L. 98–549, 98 Stat. 2780, sometimes referred to as the "Cable Act." Nevertheless, plaintiff "recognizes that Defendants can be liable for only one (1) of these statutes." Complaint ¶ 39.

Additional facts are included in the Discussion.

## II.  Fed. R. Civ. P. 12(b)(6) Standard

Defendants' Motion is predicated on Fed. R. Civ. P. 12(b)(6). A motion to dismiss pursuant to Rule 12(b)(6) constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted." Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2). It provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendant with "fair notice" of the claim and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 n.3 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

A plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. But, the rule demands more than bald accusations or mere speculation. *Id.*; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). To satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of

---

[5] Section 553(a)(1) states: "No person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law." Under § 553(c)(1), "[a]ny person aggrieved by any violation of subsection (a)(1)" may bring a civil action. Unlike § 605, § 553 does not contain a specific definition of "any person aggrieved."

those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556. In other words, the complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Id.* at 570; *see Iqbal*, 556 U.S. at 684; *Simmons v. United Mortg. and Loan Inv., LLC*, 634 F.3d 754, 768 (4th Cir. 2011).

In reviewing such a motion, a court "'must accept as true all of the factual allegations contained in the complaint,'" and must "'draw all reasonable inferences [from those facts] in favor of the plaintiff.'" *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir.), *cert. denied*, ___ U.S. ___, 132 S. Ct. 402 (2011); *Monroe v. City of Charlottesville*, 579 F.3d 380, 385-86 (4th Cir. 2009), *cert. denied*, 559 U.S. 991 (2010). However, a complaint that provides no more than "labels and conclusions," or "a formulaic recitation of the elements of a cause of action," is insufficient. *Twombly*, 550 U.S. at 555. Moreover, the court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Monroe*, 579 F.3d at 385-86.

A Rule 12(b)(6) motion will be granted if the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679 (citation omitted). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without A Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011), *cert. denied*, ___ U.S. ___, 132 S. Ct. 1960 (2012). "'Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to

support a cognizable legal theory.'" *Hartmann v. Calif. Dept. of Corr. & Rehab.*, 707 F.3d 1114, 1122 (9th Cir. 2013) (citation omitted); *accord Commonwealth Prop. Advocates, LLC v. Mortg. Elec. Reg. Sys., Inc.*, 680 F.3d 1194, 1201-02 (10th Cir. 2011) ("When reviewing a 12(b)(6) dismissal, 'we must determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed.' Dismissal is appropriate if the law simply affords no relief.") (citation omitted).

A motion asserting failure to state a claim typically "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses," *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999) (quotation marks omitted), unless such a defense can be resolved on the basis of the facts alleged in the complaint. *See Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007). "This principle only applies, however, if all facts necessary to the affirmative defense 'clearly appear[] *on the face of the complaint*,'" or in other documents that are proper subjects of consideration under Rule 12(b)(6). *Id.* (quoting *Richmond, Fredericksburg & Potomac R.R. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993)) (emphasis in *Goodman*).

In evaluating the sufficiency of a complaint in connection with a Rule 12(b)(6) motion, a court ordinarily "may not consider any documents that are outside of the complaint, or not expressly incorporated therein . . . ." *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013). In considering a challenge to the adequacy of the Complaint, however, the court "may properly consider documents attached to a complaint or motion to dismiss 'so long as they are integral to the complaint and authentic.'" *Anand v. Ocwen Loan Servicing, LLC*, --- F.3d ----, 2014 WL 2535405, at *2 (4th Cir. June 6, 2014) (quoting *Philips v. Pitt County Memorial Hosp.*,

572 F.3d 176, 180 (4th Cir. 2009)); *see also E.I. du Pont de Nemours & Co.*, 637 F.3d at 448. To be "integral," a document must be one "that by its 'very existence, *and not the mere information it contains*, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (citation omitted) (emphasis in original).

### III. Discussion

In the Motion, defendants argue that the Complaint fails to state a claim upon which relief may be granted, and thus must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).  *See* Mot. at 1; Mem. at 1.  To that end, defendants argue that plaintiff fails adequately to allege a violation of either 47 U.S.C. § 605 or 47 U.S.C. § 553, and that plaintiff's allegations are insufficient to establish individual liability.  *See* Mem. at 4-9.

A.  Cable Act liability

Defendants argue that plaintiff's Cable Act claims are fatally defective.  As to § 605, which addresses unauthorized receipt of radio communications, including digital satellite television signals, defendants argue that "'[e]xhibition' does not equate to pre-transmission interception," and that "the most the Court might infer . . . is that Defendants showed the Program on La'Sons Bar and Grill's televisions, which clearly would have had to be after the Program was transmitted to the restaurant."  Mem. at 4-5. As to § 553, which prohibits unauthorized interception or receipt of communications service transmitted over a cable system, defendants argue that neither the complaint nor any investigator's affidavit contains an allegation that defendants "received or intercepted a coaxial cable or other wire transmission."  Mem. at 5. Defendants posit: "Perhaps J & J wants the Court to assume that Defendants somehow rigged

their television wiring or other equipment to intercept a cable transmission, but there are no factual allegations to this effect in either the Complaint or the attached exhibits." *Id.* at 6.

Among other arguments, defendants assert that the Complaint fails to state a cognizable claim, *see* Mem. at 2, because plaintiff admits it "cannot determine if Defendants intercepted Plaintiff's signal via a cable system, in violation of 47 U.S.C. § 553, or via a satellite transmission, in violation of 47 U.S.C. § 605." Complaint ¶ 27. However, Fed. R. Civ. P. 8(d)(3) permits a party to "state as many separate claims . . . as it has, regardless of consistency." Therefore, I agree with plaintiff that, although it may ultimately have to choose among the theories of liability on which it will proceed, the alleged inconsistency between Counts I and II is not fatal to either count at the pleading stage. *See J & J Sports Productions, Inc. v. Tag Galleries, LLC*, 2012 WL 2577632, at *2 (D. Md. July 3, 2012); *J & J Sports Productions, Inc. v. Maryland Food & Entertainment, LLC*, 2012 WL 5289790, at *3 (D. Md. Oct. 24, 2012); *J & J Sports Productions, Inc. v. MayrealII, LLC*, 849 F. Supp. 2d 586, 588-59 (D. Md. 2012); *see also Swedish Civil Aviation Admin. v. Project Mgmt. Enters., Inc.*, 190 F. Supp. 2d 785, 792 (D. Md. 2002) ("[A]lthough [plaintiff] may not recover under both contract and quasi-contract theories, it is not barred from pleading these theories in the alternative . . . .").

With respect to plaintiff's § 605 claim, defendants rely on *Joe Hand Promotions, Inc. v. Dock Street Enterprises, Inc.*, 2011 WL 6141058 (D. Md. Dec. 8, 2011), in which the court adopted "the Seventh Circuit's view that § 605 applies to the interception of cable signals 'before they begin to travel through the cable,' while Section 553 applies to transmissions 'at the point in the system that the transmission is carried by coaxial cable or wires.'" *Id.* at *4 (citation omitted). In *Dock Street*, Judge Nickerson granted summary judgment to the defendants as to a

§ 605 claim (but not as to a § 553 claim) where unrebutted affidavit evidence established that the program at issue was received "through the cable service provided by Comcast," *id.* at *4 n.3,[6] thereby falling outside the purview of § 605.  In other words, *Dock Street* was a ruling on a motion for summary judgment, at which point the court had before it undisputed evidence specifying the method by which the program at issue was transmitted and received.

By contrast, this case is at the pleading stage; defendants' terms of service with their cable or satellite television provider, if any, are not now before the Court.  No such evidence is contained in the record, nor need it be presented before discovery has commenced.  Assuming §§ 553 and 605 reach entirely different conduct, plaintiff's allegations, appropriately pleaded in the alternative pursuant to Fed. R. Civ. P. 8(d)(3), are sufficient to state claims under each statute.  The issues as to whether the Broadcast was received via satellite or cable must be explored through discovery.  Therefore, neither of the Cable Act counts will be dismissed at this stage.

B.  Individual liability

"[T]o state a claim against an individual under the Cable Act, a complaint must allege facts showing that the individual had a right and ability to supervise the infringing activities, as

---

[6] A defendant is not liable under § 553 if the defendant was "specifically authorized . . . by a cable operator" to receive the transmission at issue.  Courts, including the *Dock Street* Court, have recognized that whether a defendant was authorized by its cable provider to receive a program will depend, in part, on the terms of service agreed to between the defendant and the cable provider.  *See, e.g.*, *Dock Street*, 2011 WL 6141058, at *5 n.4 (noting that the Comcast terms of service in that case included a disclaimer requiring the customer to receive authorization from "'the applicable program or event distributor'"); *see also Joe Hand Promotions, Inc. v. Phoenix Promotions LLC*, 2012 WL 3025107, at *2-3 (E.D. Mich. July 24, 2012) ("The Comcast terms and conditions require that Defendants obtain authorization in writing before exhibiting the Program.  This is in contrast to the facts of [*J & J Productions, Inc. v.*] *Schmalz*, [745 F. Supp. 2d 844 (S.D. Ohio 2010)] where it was the cable operator's contractual responsibility to inform the defendant that it was not authorized to provide it with certain programming.").

well as a direct financial interest in such activities." *Joe Hand Promotions, Inc. v. Maryland Food & Entertainment, LLC*, 2012 WL 5879127, at *2 (D. Md. Nov. 19, 2012). *See also, e.g.*, *J & J Sports Productions, Inc. v. L & J Group, LLC*, 2010 WL 816719, at *2 (D. Md. Mar. 4, 2010) (stating that a Cable Act plaintiff must show that the defendant "'had a right and ability to supervise the violations, and that she had a strong financial interest in such activities'") (citation omitted).

Defendants assert that the Complaint does not allege that Ms. King "was present at La'Sons Bar and Grill the night the Broadcast was shown, or that [she] supervised, directed, or controlled the alleged unlawful interception activities." Mem. at 7. Further, defendants argue that "there are no facts showing that [Ms. King], individually or personally, reaped an economic benefit as a result of showing the Broadcast," and that plaintiff's claims against Ms. King are based on nothing more than her status as an officer or member of La'Sons or as an owner of its liquor license. *Id.*

In support of its contentions regarding individual liability, plaintiff cites *J & J Sports Productions, Inc. v. 291 Bar & Lounge, LLC*, 648 F. Supp. 2d 469 (E.D.N.Y. 2009), a Cable Act case in which the district court entered default judgment against a business entity operating a bar, but refused to impose liability on the individual owner of the business entity. There, the plaintiff alleged "that the defendants willfully and unlawfully intercepted and received the signal of the Fight, and then exhibited it to its patrons in the hopes of gaining commercial advantage," but the complaint's allegation that the individual owned the entity was the "entire extent" of particular allegations against the individual. *Id.* at 472-73. The court reasoned: "Individual liability under the Cable Act requires that the individual authorize the underlying violations. Put differently, the

complaint must establish that the individual had a 'right and ability to supervise' the violations, as well as an obvious and direct financial interest in the misconduct." *Id.* at 473 (citations omitted). The court observed that "the plaintiff has made no allegation that Mr. Caba was present for the violation, that he authorized or controlled it, or that he reaped commercial profit from it," and admonished the plaintiff: "To the extent that J & J wishes to assert liability against an individual in the future, it should make adequately detailed allegations in the complaint, beyond the conclusory and vague charge of mere ownership of the offending entity." *Id.* at 473. In the present case, defendants assert that that J & J's allegations of individual liability are deficient in the same manner as in *291 Bar & Lounge. See* Mem. at 6-8.

In my view, defendants' arguments do not fairly reflect plaintiff's allegations concerning Ms. King. Plainly, this is not a case in which a plaintiff has sought to hold an individual defendant liable based only on that individual's ownership interest. *See, e.g.*, *291 Bar & Lounge*, 648 F. Supp. 2d at 473 (ownership of offending entity insufficient to establish individual liability); *Joe Hand Promotions, Inc. v. Coaches Sports Bar*, 812 F. Supp. 2d 702, 703 (E.D.N.C. 2011) ("Absent allegations that [the alleged principal] authorized, directed, or supervised the illegal interception, Joe Hand cannot establish Mr. Dillon's individual liability."); *Circuito Cerrado, Inc. v. Pizzeria y Pupuseria Santa Rosita, Inc.*, 804 F. Supp. 2d 108, 113 (E.D.N.Y. 2011) (no individual liability where plaintiff merely alleged "ownership of the violating entity"). Unlike in the cases cited above, plaintiff alleges that Ms. King was an "officer[], director[], shareholder[], and/or principal[]" of La'Sons and served as its resident agent; that she had "supervisory capacity and control over the activities occurring within" La'Sons on September 15, 2014; that she had "close control over the internal operating procedures and employment

practices" of La'Sons at that time; that she "received a financial benefit from the operations of" La'Sons on September 15, 2014, when La'sons was charging patrons a $10 cover charge; and that she "advertised for the exhibition of Plaintiff's broadcast within" La'Sons.  Complaint ¶¶ 9-12, 14, 19-20.  Such allegations are sufficient to allow this suit to proceed as to Ms. King, the sole remaining individual defendant.[7]

C.  Plaintiff's request for sanctions

In the Opposition, plaintiff also indicates that sanctions are appropriate, in light of what it portrays as defense counsel's misappropriation of a motion filed by another lawyer in a similar but unrelated case, *J & J Sports Productions, Inc. v. Maryland Food & Entertainment, LLC*, ELH-11-3344 (D. Md.).  *See* Opp. at 5-6.  Plaintiff claims that defense counsel has "acted in a manner which is highly unprofessional and unethical" and has committed "blatant violations" of Fed. R. Civ. P. 10(a) and 11(b).  *Id.* at 6.  Notably, plaintiff has not filed a separate motion for sanctions, as required under Fed. R. Civ. P. 11(c)(2).

Plaintiff attached to its Opposition, as Exhibit B (ECF 13-2), a copy of a prior motion to dismiss and related submissions filed on April 2, 2012, as ECF 14 in ELH-11-3344, by B. Darren Burns, Esq., of the law firm Carney, Kelehan, Bresler, Bennett & Scherr, LLP (the "MF&E Motion").  A comparison of the MF&E Motion with the now-pending Motion reveals that

---

[7] In light of this conclusion, I need not consider the relevance of additional information submitted by plaintiff in connection with the Opposition, including an affidavit attached to the Opposition as Exhibit A (ECF 13-1).  I note, however, that a plaintiff cannot supplement allegations found in a complaint by adding allegations through an opposition brief.  *See Mylan Laboratories, Inc. v. Akzo, N.V.*, 770 F. Supp. 1053, 1068 (D. Md. 1991) (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101 (7th Cir. 1984)), *aff'd*, 2 F.3d 56 (4th Cir. 1993); *see also Zachair Ltd. v. Driggs*, 965 F. Supp. 741, 748 n.4 (D. Md. 1997), *aff'd*, 141 F.3d 1162 (4th Cir. 1998).

Further, in their Motion, defendants make no mention of plaintiff's claim for injunctive relief in Count III.  Accordingly, Count III will not be dismissed.

defense counsel here borrowed liberally from the structure, arguments, and actual text of the MF&E Motion.  In essence, defense counsel adapted the MF&E Motion to the present case, and submitted it as the Motion to Dismiss here (ECF 12).  Among the arguments borrowed from the MF&E Motion are contentions that pertain to a common law claim for conversion that was raised in *J & J Sports Productions, Inc. v. Maryland Food & Entertainment, LLC*, ELH-11-3344, even though J & J has not asserted such a claim in the present dispute.  *Compare* Mem. at 8-9 *with* MF&E Motion (ECF 13-2) at 13-14.

Defense counsel's claim here that plaintiff's allegations rely on "boilerplate paragraph[s]," *see* Mem. at 4, 5, is rich with irony, as it appears that defense counsel borrowed *that very term* (and the bulk of the text found in the surrounding paragraphs of the Motion) from the MF&E Motion.  Defense counsel's reference here to "the affidavit attached to the Complaint" is also puzzling, *see* Mem. at 4, as plaintiff did not attach an affidavit to the Complaint (ECF 1) filed in this case.[8]  Indeed, in defendants' submissions here, defense counsel even neglected to revise the captions of the Motion, supporting memorandum, and proposed order, instead using the case number for the unrelated MF&E case.  *See* Mot. at 1; Mem. at 1; ECF 12-1 (proposed order).

Defense counsel's submission is probably not counsel's finest moment.  On the other hand, lawyers are trained to look backwards as well as forwards, and to research, uncover, and learn from comparable cases.  It is not surprising that an attorney would attempt through legal

---

[8] I also note that on page 7 of the Opposition, plaintiff asserts that it had "alleged in the Complaint . . . that Marlene R. King was the holder of the liquor license" of La'sons.  But, the Complaint in this case contains no such allegation.  Thus, it appears that, at least in this one instance, plaintiff's counsel may have confused allegations raised in other, similar cases with those alleged here.  Indeed, the case law indicates that J & J has been a frequent litigant under the Cable Act in recent years.

research to identify cases with similar issues and, if appropriate, to advance arguments raised previously by others.

The Court does not condone wholesale copying of the work of others.   Nonetheless, plaintiff's request for sanctions is denied.

### IV. Conclusion

For the foregoing reasons, the Motion will be denied.  An appropriate Order follows.


Date:   August 27, 2014                    _____/s/_____
                                           Ellen Lipton Hollander
                                           United States District Judge